IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| RONALD CARTER #1271071 | § | |
| v. | § | CIVIL ACTION NO. 6:05cv112 |
| OFFICER JUSTIN KUEHN, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Ronald Carter, an inmate currently confined in the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights by officers of the Tyler Police Department. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding. 28 U.S.C. §636©).

An evidentiary hearing was conducted pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985) on August 10, 2005. At this hearing, Carter testified that on June 2, 2003, he was arrested on charges of possession of a controlled substance. He stated that he was walking home and took a shortcut through an alley. Carter said that someone had apparently called the police, thinking that he was looking in windows. Officer Hendrick approached him and he raised his hands in the air. Hendrick told him to put his hands behind his back, Carter said, and he complied with this order. Nonetheless, he said, Hendrick and another officer named Kuehn slammed him to the ground.

Carter stated that a field test showed that he had drugs, but actually he did not. He said that the officers ripped his shirt and apparently saw something, possibly on the ground, believed to be drugs. He was taken to the patrol car and put inside. Carter stated that he was "angry," and he threatened to kick the windows out of the patrol car, but he did not actually do so. Instead, Carter said, he told the officers that he was having chest pains; Carter explained at the hearing that he was faking and "acting crazy." Paramedics were called and they examined him and left.

1

Carter testified that he stayed in jail until June 26, 2003.  He was then released because the district attorney declined prosecution.  Carter explained that the substance was sent to the Department of Public Safety lab and it tested negative as a controlled substance.  He said that it must have turned up negative on the field test as well, but he was put in jail anyway.

On cross-examination, Carter said that he was also complaining of a use of excessive force.  He stated that he complied with the order to put his hands behind his back, but that the officers "shoved him to the ground" and ripped his shirt.  He said that he did not have anything in his hands when the officers approached him and that he did not crush anything in his hands.

Carter acknowledged that the officers did not use weapons or gas on him, but just their hands.  He denied pulling away.  Carter also acknowledged that the officers summoned medical help for him when he said that he was having chest pains.

Carter added that he did not complain of any injuries when he was at the jail because he did not need any medical care.  He did say that his back was hurting, but he never told anyone about this or seek any medical help, either during or after the arrest or during the time that he spent in jail.

Officer Ty Hendrick of the Tyler Police Department testified that he knew Carter even before the incident took place because Carter had frequently been in trouble.  He stated that at about 1:52 p.m., he was dispatched to North Moore Street to help an officer named Jay Moore, because a person had been seen going about looking in windows.  A description was given of the person's clothing, and Hendrick suspected that it may have been Carter because he had seen Carter earlier that day and Carter was wearing the same clothes.  Additionally, Hendrick said, Carter had a criminal record which included burglary.

Hendrick stated that he saw Carter going down an alley, so he pulled his car in and had Carter stop.  Hendrick noted that it is standard procedure to pat down an individual for the safety of the officer, and he asked and received permission to pat down Carter.  Hendrick said that he told Carter that he, Carter, was not under arrest, and that Carter should turn around.  Hendrick took hold of Carter's hands behind his back, and noticed that Carter had his right hand in a fist.  When he asked

if Carter was carrying anything, Hendrick said, Carter crushed the object in his hand and tried to wipe it on his shirt. Hendrick described the object, after being crushed, as a white powder and said that he thought it was cocaine base.

Hendrick said that Carter tried to pull away from him, and so Officer Kuehn helped Hendrick hold Carter against the patrol car. He said that the officers then placed Carter on the ground; he described this as being more of a rolling off of the car onto the ground, not a slamming of Carter's body.

Hendrick added that Carter became very agitated, cursing and screaming. He noted that Carter threatened to kick out the window of the patrol car, although he did not actually do so. Carter then said that he was having chest pains, so the officers contacted emergency medical technicians. They came and checked him out, determined that there was no emergency, and left. Hendrick said that Carter made no complaints of injury.

Hendrick explained that the police department uses a six-step continuum of force, ranging from verbal persuasion to lethal force. In this case, no weapons were used, so the use of force was considered minor, and no use of force report was necessary.

Hendrick also said that a field test was run on the white powder, and this test indicated that the powder contained cocaine base. He said that Carter was taken to jail and that he, Hendrick, did the paperwork. At no time did Carter complain of any injuries.

Officer Justin Kuehn testified that he pulled his car behind Hendrick's as Hendrick was preparing to search Carter.[1] He saw that Hendrick was struggling with Carter and went to assist him. Kuehn said that he saw where Carter had tried to crush something in his hand and wipe it on his shirt. Kuehn stated that he tried to cut off the portion of Carter's shirt where Carter had tried to wipe his hand, and that this cut is how Carter's shirt got torn. Kuehn added that Carter was not "slammed" to the ground, but that he was rolled off of the car onto the ground.

---

[1] Officer Kuehn's name was incorrectly given in the original complaint as "Kruger."

The final witness to testify was Sgt. Gary Rice, who said that he was the duty supervisor who went to the scene. Rice said that Carter complained of chest pains and emergency medical technicians were called. They examined Carter and found no injuries, and the only complaint voiced by Carter was of chest pain.

On cross-examination, Rice denied that he or any of the other officers laughed at Carter. He said that the field test came back positive, but noted that the field test is not the same as sending the substance to a lab with technicians.

Following this testimony, the Defendants offered documents, without objection, showing that the jail intake paperwork indicated that Carter did not have any injuries, and an affidavit from the jail captain saying that Carter did not file any sick call requests while he was in the jail. Carter acknowledged that this was correct.

## Legal Standards and Analysis

Carter complains that he was falsely arrested, as shown by the fact that after spending three and a half weeks in jail, he was released because the D.P.S. lab test showed that he did not have a controlled substance. However, the records in this case show that the facts supporting the arrest were placed before a magistrate, who determined that probable cause existed. The Fifth Circuit has held that the decision of an independent intermediary such as a magistrate breaks the chain of causation and insulates the initiating party from liability for false arrest. Shields v. Twiss, 389 F.3d 142, 150 (5th Cir. 2004). Carter has failed to show that the arresting officer improperly influenced the magistrate in making this determination. His claim on this point is without merit.

To the extent that Carter claims that he was the victim of malicious prosecution, this claim also fails. The Fifth Circuit has held that causing charges to be filed without probable cause does not, without more, violate the Constitution. Shields, 389 F.3d at 150, *citing* Castellano v. Fragozo, 352 F.3d 939, 953 (5th Cir. 2003) (*en banc*).

Finally, Carter complains that excessive force was used upon him in the course of the arrest. An arrestee claiming excessive force in violation of the Fourth Amendment must show three

elements: (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive to the need, and (3) the force used was objectively unreasonable. Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999). The Fifth Circuit made clear that some form of injury must have been suffered and that *de minimis* uses of force do not rise to the level of a constitutional violation. Williams, 180 F.3d at 703, *citing* Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993).

In this case, the records, including Carter's own testimony, show that he did not suffer any injury as a result of the incident. He complained only of chest pain at the time of the arrest, a complaint which he acknowledged in court was spurious. He made no complaint of injury upon his arrival at the jail, nor did he ever seek medical care during the three and a half weeks that he spent in jail prior to his release. The jail records show and Carter confirmed that he filed no sick call requests during his stay there. Because Carter did not suffer any injury as a result of the use of force complained of, his claim of excessive force is without merit. Williams, 180 F.3d at 703.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Carter's claims lack any arguable basis in law and fail to state a claim upon which relief may be granted in federal court.  His lawsuit may therefore be dismissed as frivolous.  *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993).  It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous.  28 U.S.C. §1915A.  It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **15** day of **August, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE